**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



_____
Mary Ann Whipple
United States Bankruptcy Judge

**Dated: March 29 2017**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 15-33831 |
| | ) | |
| Amanda R. Dunne, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 16-3105 |
| | ) | |
| Daniel M. McDermott, | ) | Hon. Mary Ann Whipple |
| United States Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Amanda R. Dunne, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF DECISION AND ORDER
GRANTING MOTION FOR SUMMARY JUDGMENT**

This adversary proceeding is before the court on the unopposed Motion for Summary Judgment ("Motion") filed by the United States Trustee ("UST"). [Doc. # 14]. Defendant is proceeding pro se and is the Debtor in the underlying Chapter 7 bankruptcy case.[1] The UST's complaint seeks an order revoking Defendant's Chapter 7 discharge under 11 U.S.C. § 727(d)(1) and (d)(3). The UST's Motion addresses his

---

[1] Debtor was initially represented by counsel in the underlying Chapter 7 case; however, the court granted counsel's motion to withdraw as attorney for Debtor on September 26, 2016.

claim under 727(d)(1) only.

The district court has jurisdiction over the Defendant's underlying Chapter 7 bankruptcy case as a case under Title 11 and over all proceedings arising in or related to that case, including this adversary proceeding. 28 U.S.C. § 1334. The Chapter 7 case and all proceedings arising in or related to that case, including this adversary proceeding, have been referred to this court for decision. 28 U.S.C. § 157(a) and General Order No. 2012-07 of the United States District Court for the Northern District of Ohio. This adversary proceeding is a core proceeding in which this court can make a final determination because it involves a debtor's right to a discharge. 28 U.S.C. § 157(b)(1) and (2)(J).

For the reasons that follow, the Motion will be granted.

## FACTUAL BACKGROUND

The following facts are undisputed. On November 29, 2015, Defendant filed a petition for relief under Chapter 7 of the Bankruptcy Code. [Case No. 15-33831, Doc. # 1].[2] On her Chapter 7 Statement of Current Monthly Income, Official Form 22A-1, Defendant states that she is not married. [*Id*. at 49/51]. Similarly, Defendant's Schedule I leaves blank or indicates the information is not applicable regarding a non-filing spouse. [*Id*. at 25]. On January 12, 2016, the Chapter 7 Trustee held and concluded a § 341 meeting of creditors. [UST Ex. A]; 11 U.S.C. § 341(a). During the § 341 meeting, the Trustee asked Defendant what her marital status was, to which Defendant responded, "single." [*Id.* at 4].

On February 2, 2016, the court entered an order granting the Trustee's Motion for Turnover and requiring Defendant to turn over to the Trustee her 2015 Federal and State Income Tax Returns and non-exempt portion of income tax refunds on or before April 15, 2016. [Case No. 15-33831, Doc. # 20]. On April 7, 2016, Defendant, through her attorney, provided the Trustee with a 2015 Internal Revenue Service Form 1040, indicating that she is a "head of household" and that the return was "self-prepared." [UST Ex. B]. The 2015 Form 1040 discloses an income tax refund in the amount of $3,430. [*Id*. at 3]. Although the tax return shows an earned income credit based upon one qualifying child, it also shows that she is claiming only one exemption for herself. [*Id.* at 3-4].

In fact, Defendant was married at the time she filed her petition and schedules. [*See* Doc. # 9, ¶¶ 8-9]. She did not file her tax return as "head of household." She and her husband filed a joint federal income

---

[2] As permitted by Rule 56 (c)(3) of the Federal Rules of Civil Procedure, applicable in this adversary proceeding under Rule 7056 of the Federal Rules of Bankruptcy Procedure, the court takes judicial notice of the contents of its case docket and the Debtor's schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

tax return for 2015, claiming three exemptions as well as the earned income credit. [*Id.* at 3 & Ex. A attached thereto; UST Ex. D]. The income tax return filed also shows that it was "self-prepared" and shows that Defendant was entitled to a tax refund in the amount of $7,750. [*Id.*] The actual income tax refund check issued by the IRS on May 26, 2016, was in the amount of $5,914. [UST Ex. C].

Defendant was granted a discharge in the underlying Chapter 7 case on March 16, 2016. [Case No. 15-33831, Doc. # 22]. The UST's complaint to revoke Defendant's discharge was timely filed on September 15, 2016. *See* 11 U.S.C. § 727(e).

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id.* Although a party fails to respond to a motion for summary judgment, the court must nevertheless satisfy itself that the moving party has met the demands of Fed. R. Civ. P. 56 before granting the motion. *See Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 407 (6th Cir. 1992).

### II. 11 U.S.C. § 727(d)(1)

A bankruptcy discharge is considered the heart of the Bankruptcy Code's "fresh start" policy. *Sayre (In re Sayre)*, 321 B.R. 424, 427 (Bankr. N.D. Ohio 2004). For this reason, the statutory exceptions to discharge are generally to be strictly construed in favor of the debtor. *United States v. Storey*, 640 F. 3d 739, 743 (6th Cir. 2011); *Smith v. Jordan (In re Jordan)*, 521 F.3d 430, 433 (4th Cir. 2008). On the other

3

hand,

> the very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction. As we have stated, "the successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.

*Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987) (citations omitted).

As the party seeking revocation of Defendant's discharge, the UST bears the burden of proof, *see* Fed. R. Bankr. P. 4005, by a preponderance of the evidence, *McDermott v. Davis (In re Davis)*, 538 B.R. 368, 384 (Bankr. S.D. Ohio 2015); *Sayre*, 321 B.R. at 428.[3]

Under § 727(d)(1), a debtor's bankruptcy discharge will be revoked if "such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." 11 U.S.C. § 727(d)(1). Thus, to succeed on a 727(d)(1) claim, a plaintiff must prove: (1) fraud that would have prevented the debtor's discharge had it been brought to the court's attention prior to discharge and (2) that the plaintiff was unaware of the debtor's fraud prior to the discharge. *Buckeye Retirement Co. L.L.C. v. Heil (In re Heil)*, 289 B.R. 897, 903 (Bankr. E.D. Tenn. 2003); *In re Sayre,* 321 B.R. at 327.

The UST contends that by misrepresenting her marital status as single, Defendant obtained her Chapter 7 discharge by fraud. That the UST did not know Defendant's representation that she was single was untrue until after Defendant received her discharge on March 16, 2016, is shown by the fact that, on April 7, 2016, Defendant provided a Form 1040 income tax return to the Trustee showing that she was not

---

[3] There are cases out there, including from this district, that hold the standard of proof in a § 727(d)(1) action is clear and convincing evidence. *E.g., Dobnicker v. Albers (In re Albers)*, 80 B.R. 414, 416-17 (Bankr. N.D. Ohio 1987). If one shepardizes *In re Albers*, it turns up as good law. To the extent those cases were correct before, they are not now. At least since the Supreme Court's decision on actions involving exceptions to discharge in *Grogan v. Garner*, 498 U.S. 279, 287 (1991), courts routinely find the standard of proof in both discharge objection and discharge revocation actions to be a preponderance of the evidence, even where fraud is involved. *E.g. In re Sayre,* 321 B.R. at 427 (same court as *In re Albers*). In *Barclays/Am. Business Credit v. Adams (In re Adams)*, 31 F.3d 389, 394 (6th Cir. 1994), *cert. denied*, 513 U.S. 1111 (1995), the Sixth Circuit Court of Appeals, relying on *Grogan v. Garner*, decided that the standard of proof in discharge objection actions under § 727(a) is a preponderance of the evidence. There is no reason an action seeking revocation of discharge under § 727(d) should have a higher standard of proof than an action objecting to discharge in the first instance. Rightly so, more recent cases deciding whether a discharge should be revoked apply a preponderance of the evidence standard instead of a clear and convincing standard as in *In re Albers*.

4

married, continuing the misrepresentation made in her bankruptcy schedules, means test form, and testimony at the § 341 meeting of creditors. As to the first element of his claim, the UST contends that Defendant would have been denied a discharge under § 727(a)(2) and (a)(4)(A) had the court been aware of her misrepresentation. Because Defendant's discharge must be revoked under § 727(d)(1) and (a)(4)(A), the court does not address Plaintiff's arguments under § 727(a)(2)(A).

Under § 727(a)(4)(A), a debtor is denied a discharge if "the debtor knowingly and fraudulently, in or in connection with the case. . .made a false oath or account[.]" In order to prevail, a plaintiff must prove, by a preponderance of the evidence that:

> 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case.

*Keeney v. Smith (In re Keeney),* 227 F.3d 679, 685 (6th Cir. 2000).

The first three elements under *Keeney* are readily satisfied. False statements made by Defendant on her schedules, means test, and at the § 341 meeting of creditors regarding her marital status were all under oath. *See Noland v. Johnson (In re Johnson),* 387 B.R. 728, 743 (Bankr. S.D. Ohio 2008) (citing *Hamo v. Wilson (In re Hamo),* 233 B.R. 718, 725 (6th Cir. BAP 1999)); *Gandy v. Schuchardt (In re Gandy),* 645 F. App'x 348, 353 (6th Cir. 2016). And there is no dispute that she knowingly misrepresented her marital status as single.

The fourth element under *Keeney* requires that debtor made the statements with fraudulent intent. The issue of fraudulent intent is often the most difficult to prove. In *Keeney,* the Sixth Circuit Court of Appeals addressed intent to defraud under § 727(a)(4)(A), explaining that it "involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." *Keeney*, 227 F.3d at 685 (quoting *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998)). However, "a debtor is entitled to discharge if false information is the result of mistake or inadvertence." *Id.* at 686. Because a defendant rarely admits fraudulent intent, actual intent may be inferred from circumstantial evidence, *id.* at 686, or by inference based on a course of conduct, *McDermott v. Kerr (In re Kerr)*, 556 B.R. 343, 350 (Bankr. N.D. Ohio 2016).

In this case, the court finds no genuine dispute that Defendant's failure to disclose the fact that she was married was intended to create in the Trustee the erroneous impression that she was single and that such failure was not the result of mistake or inadvertence on her part. Defendant failed to disclose her true marital status on Schedule I, her means test, and at the § 341 meeting in response to a direct question by the Trustee. She makes no bones in her response to the complaint about intending to conceal her marital status,

5

both in this court and in the state domestic relations court. While Defendant also offers in her answer a variety of reasons for the lie and excuses for why her true marital status is of no moment in this case as far as she is concerned, it is not a debtor's role to decide what is relevant or important to estate administration and what is not. *Stevenson v. Cutler (In re Cutler)*, 291 B.R. 718, 726 (Bankr. E.D. Mich. 2003). Even if her reasons and excuses, individually or taken together, are taken as true, they do not cast reasonable doubt that Defendant intended to create an erroneous impression for the Trustee and has displayed throughout this case a reckless indifference to the truth about her marital status. Her ready willingness to do so in another court as well is part of her whole pattern of conduct that emphasizes that indifference to the truth in this court. The facts and circumstances and the only reasonable inferences to be taken from them show that she doubled down on her lie as estate administration progressed, from her initial filings to her later testimony at the meeting of creditors, culminating in the dummy tax return.

The fifth element under *Keeney* is also satisfied in that her statement related materially to the bankruptcy estate. "The subject of a false oath is material if it 'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *Keeney*, 227 F.3d at 686 (quoting *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992)). The Sixth Circuit Court of Appeals more recently addressed materiality under § 727(a)(4)(A) in *Gandy*. In that case, the court rejected the debtor's argument that his false oaths relating to his income were not material. *Gandy*, 645 F. App'x at 354. The court explained that "[t]he test for determining whether a false oath is material is not so narrow as [debtor] suggests when he contends that materiality requires that a false oath "would have changed [something] with respect to the case or produced an asset or other benefit to the estate. Rather, a false oath is material if it 'bears a relationship to the bankrupt's business transactions.' 'In determining whether or not an omission is material, the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors.'" *Id.* (quoting *Beaubouef*, 966 F.2d at 178); *See Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984) (citing cases and stating that although there is no indication that the concealed information would have or could have revealed assets available for creditors, "that circumstance does not excuse the concealment of information, which is necessary to the investigation of a debtor's financial condition"); *Sheehan & Assocs. PLC v. Lowe,* No. 12-11768, 2012 WL 3079251, *7, 2012 U.S. Dist. LEXIS 105871, *18-19 (E.D. Mich. July 30, 2012) (stating that "the question is not whether the false oaths *affect* the administration of the Debtor's estate or discovery of assets, business dealing, or the existence and disposition of debtor's property as claimed by the debtor, but whether the false oaths *bear a relation* to these things" and concluding that

6

"[i]t is not [debtor's] role to decide what is relevant or important to the administration of his estate and what is not" (emphasis in original)); *Silvers v. Alanya (In re Alanya)*, Adv. No. 09-1452, 2010 WL 5348728, *6, 2010 Bankr. LEXIS 4949, *20-21 (Bankr. E.D. Va. Dec. 21, 2010) (addressing § 727(a)(4)(A) and stating that "the principle of 'no harm, no foul' has no applicability, and a false statement is not made less material simply because, at the end of the day, a correct statement would not have affected the administration of the case").

A debtor's marital status is an essential piece of information that generally affects calculations under the means test and under 11 U.S.C. § 707(b) that are necessary in determining whether granting relief would be an abuse of the provisions of Chapter 7. More importantly, in this case it bears a relationship to the estate because it concerns the discovery of assets and/or the existence of property of the estate and, specifically, the amount of the income tax refund to which Defendant was entitled. *Johnston v. Hazlett (In re Johnston)*, 209 F.3d 611, 613 (6th Cir. 1999)(federal income tax refunds, including earned income credit which also can result in an overpayment of tax, constitute property of a debtor on a pre-petition basis and property of the bankruptcy estate on a post-petition basis); *In re Walker*, 279 B.R. 544 (Bankr. W.D. Mo. 2002)(same). The court entered the order requiring Defendant to turn over her 2015 income tax returns before her discharge was entered. Although Defendant did not produce the first tax return until after her discharge was entered, Defendant's pre-discharge false oaths regarding her marital status impaired the Trustee's ability to determine the accuracy and veracity of that return.[4]

Even assuming that Defendant's statements in her answer to the Complaint, on which the UST relies in the Motion, about her spouse's financial status and assets are true, the court rejects her "no harm, no foul" argument. Misrepresenting her marital status was a material misrepresentation as it interfered with the Trustee and UST's ability to determine the proper handling of the bankruptcy case based on facts, rather than fiction. *See Jacobs v. Pitts (In re Pitts)*, Adv. No. 11-08003-DHW, 2011 WL 3862193, *6, 2011 Bankr. LEXIS 3341, *15-16 (Bankr. M.D. Ala. Sept. 1, 2011) (finding false oath regarding marital status a material misrepresentation as debtor's marital statuts is "highly relevant" to determination under § 707(b))*; Lowe,* 2012 WL 3079251 at *6, 2012 U.S. Dist. LEXIS 105871, *17-18 (finding omissions and concealments prevented creditor an adequate opportunity to investigate debtor's affairs).

---

[4] The UST places much emphasis on Defendant's clear misrepresentation regarding her marital status on her tax return produced to the Trustee and the amount of the refund shown on that return versus the amount Defendant actually received after filing a joint return. However, her representations regarding her tax refund were made *after* entry of Defendant's discharge. While those representations may be relevant under other subsections of § 727, they cannot be a basis for finding that Defendant "obtained" her discharge through such representations, as is required under § 727(d)(1).

## CONCLUSION

The court is cognizant that state of mind issues are often not appropriate candidates for determination on summary judgment. *See Buckeye Retirement Co., LLC, LTD. v. Swegan (In re Swegan)*, 383 B.R. 646, 655 (B.A.P. 6th Cir. 2008). Nevertheless, even when intent is an issue, "summary judgment is appropriate if all reasonable inferences defeat the claims of one side..." *Gertsch v. Johnson & Johnson Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 165 (B.A.P. 9th Cir. 1999)(quoting *Newman v. Checkrite Cal. Inc.*, 912 F. Supp. 1354, 1380 (E.D. Cal. 1995)); *see In re Chavin*, 150 F.3d at 728-29 (affirming grant of summary judgment under § 727(a)(4) where debtor failed to disclose stock options and a partnership interest); *First Nat'l Bank, Larned v. Davison (In re Davison)*, No. KS-04-013, 2004 Bankr. LEXIS 848, 2004 WL 2852352 (B.A.P. 10th Cir. June 29, 2004)(affirming grant of summary judgment under § 727(a)(4)(A) where debtors failed to disclose certain prepetition transfers); *Garrett v. Vaughan (In re Vaughan)*, 342 B.R. 385, 2006 Bankr. LEXIS 406, 2006 WL 751388 (B.A.P. 10th Cir. March 22, 2006)(table)(affirming grant of summary judgment under § 727(a)(4)(A)). This is such a case. Because Defendant's discharge would have been denied under § 727(a)(4)(A) had the court been made aware of Defendant's false oaths before her discharge was granted, and neither the Trustee nor Plaintiff were aware of her actual marital status before then, the court finds that Plaintiff has met his burden of proof under §727(d)(1). There are no genuine issues of material fact and Plaintiff is entitled to judgment as a matter of law.

**THEREFORE,** for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the UST's Motion for Summary Judgment [Doc. # 14] be, and hereby is, **GRANTED.** The court will enter a separate judgment in accordance with this Memorandum of Decision and Order.

###